LEE, Justice,
for the Court:
Louise B. Barrett, individually, and as executrix of the Estate of Eugene B. Barrett, deceased, and her children appeal from a judgment of the Chancery Court of the First Judicial District of Hinds County, Mississippi, entered in favor of Dr. Ellis Moffitt [Moffitt] in the amount of nine thousand six hundred seventy-eight dollars twelve cents ($9,678.12).
The Barretts contend that Moffitt failed to probate his claim as required by law and that such failure is a bar to this action.
Moffitt and one Lee West were partners in a livery stable business known as Horse-haven Stables, and they borrowed twenty-five thousand dollars ($25,000) from Citizens’ National Bank of Jackson, Mississippi, through a single-payment promissory note. The funds were used in the capitalization of the enterprise. On January 16, 1974, that note was paid by converting same to an installment promissory note with a balance, principal’ and interest, of thirty-five thousand six hundred eleven dollars twenty cents ($35,611.20), payable in monthly installments of five hundred ninety-three dollars fifty-two cents ($593.52).
James Eugene Barrett and William E. Fowler also operated a livery stable business, known as Siwell and Southern Stables, Inc. On July 1,1974, they purchased all the equipment and chattels of Horsehaven Stables, and a bill of sale was executed to them by Moffitt and West, in which instrument Barrett and Fowler assumed payment of the installment note in the original amount of $35,611.20. In November, 1974, Barrett purchased Fowler’s interest in Horsehaven, Siwell and Southern Stables, Inc., and Barrett made the monthly payments until he died on June 8,1977. Barrett’s widow qualified as executrix of his last will and testament and continued the monthly payments for approximately four (4) or five (5) months after his death and then, upon the advice of the estate’s attorney, she discontinued making the payments. The original note was not secured to the Citizens’ Na *625 tional Bank, and Moffitt and West did not require Barrett and Fowler to secure same when the property was transferred to them.
Upon default in the payment of the installments by the Barrett estate, the bank called upon Moffitt to pay the balance of $9,678.12. He complied with the demand by executing a 90-day note- in said amount payable to the bank. He then sued Mrs. Barrett, individually, and as executrix, on June 7, 1978, for the balance of the note which he paid. The complaint was later amended to include other beneficiaries under the will.
After the executrix of Barrett’s estate qualified, notice was published July 8, 15, and 22, 1977, for all creditors to file claims against the estate within ninety (90) days from the date of the first publication of the notice or the claims would be barred. The 90-day period had been expired for approximately eleven (11) months at the time Mof-fitt filed his bill of complaint.
There is little dispute in the facts. The threshold question is whether or not appel-lee’s claim was barred by the 90-day statute of limitations for failure to probate it within that period. Mississippi Code Annotated Section 91-7-151 (Supp.1979) provides, in part:
“All claims against the estate of deceased persons, whether due or not, shall be registered, probated, and allowed in the court in which the letters testamentary or of administration were granted within ninety (90) days after the first publication of notice to creditors to present their claim. Otherwise, the same shall be barred and a suit shall not be maintained thereon in any court, even though the existence of the claim may have been known to the executor or administrator. . . .” (Emphasis added)
Appellee contends that the claim of Dr. Moffitt was an inchoate and contingent claim and briefs his position as follows:
“Prior to the death of Barrett, Moffitt had no cause of action against Barrett. Moffitt’s claim did not accrue until January of 1978, when Moffitt paid off the note; or at the earliest in November of 1977, when the note went into default status. At both of these times, the 90-day period for filing of claims under Section 91-7-151 had already elapsed. The Reedy and Sledge cases clearly state that in order for a ‘claim’ to be the type which is required to be probated in accordance with Section 91-7-151, that claim: (1) must have been enforceable against the decedent during his lifetime; and (2) must not be an inchoate or contingent claim.

In the case at bar, until such time as Barrett and Fowler breached their contract to pay the monthly installment payments on said note as and when due, no claim accrued which could be sued upon by Moffitt, West, the Bank or . anyone else. Until Barrett and Fowler breached their duty to Moffitt and West by failing to make the payments to the Bank as they contracted to do, Moffitt did not have a cause of action against Barrett or Fowler.”
Moffitt’s claim against Barrett was specifically for the balance of the note which Barrett assumed, and was enforceable during the lifetime of Barrett, although suit could not be instituted as long as the installments were paid as they became due. The contention of Moffitt is contrary to the statute and the holding of this Court in Reedy v. Alexander, 202 Miss. 80, 30 So.2d 599 (1947), where it was stated:
“The term ‘claim’ in statutes relating to claims against estates includes not only debts already due, but unmatured debts. Roth v. Ravish et al., 111 Conn. 649, 151 A. 179, 74 A.L.R. 364. It applies only to specific money demands due or to become due and not to inchoate and contingent claims. Evans v. Hoyt, 153 Ark. 334, 240 S.W. 409.” 202 Miss. at 89, 30 So.2d at 601.
Appellee cites Sledge & Norfleet Co. v. Dye, 140 Miss. 779, 106 So. 519 (1926) which held that secondary and contingent claims are exceptions to the Mississippi non-claims *626 statute. In Sledge, two (2) notes due from Coldwater Mercantile Company to Mrs. Jones were endorsed by her to Sledge & Norfleet Company as collateral security for an indebtedness. Sledge failed to probate the notes and instituted suit against Mrs. Jones’ estate. The Court held that the claim was secondary because the notes were given as collateral security and that the claim was contingent because the corporation was primarily liable and might have paid the notes. The Court said:
“Not only was the liability by virtue of this indorsement secondary, but it was contingent upon the failure of the Cold-water Mercantile Company to pay its indebtedness to the appellant when the same became due. Whether the Coldwa-ter Mercantile Company would pay or fail to pay the note to the appellant, for the payment of which the two notes indorsed by the testatrix were pledged, could only be ascertained after the same became due on November 15, 1922, which was long after the death of the testatrix.” 140 Miss. at 786, 106 So. at 520.
The present case is different from Sledge for the reason that Barrett and Fowler assumed the indebtedness owed by Moffitt and West and agreed to pay that indebtedness. Barrett was primarily liable to Mof-fitt and no contingency was involved.
Reedy v. Alexander, supra, quoted from Roth v. Ravich et al., 111 Conn. 649, 151 A. 179, 74 A.L.R. 364 (1930), in which the facts are similar to the case at bar. The Roth court said:
“The assumption agreement of Hicks was an absolute obligation to pay the full amount of the note according to its terms, and, so far as appears, it was not qualified or conditioned upon any happening or contingency whatsoever. The .trial court properly held that this was an obligation existing at the death of Hicks and that legal presentation of his claim by the plaintiff was required by law to render it enforceable against the estate. Hicks, by his own payments and his executors in the same way after his death, had recognized the claim as existing. The deficiency now ascertained is merely the unpaid balance of that claim. That its existence and amount were not known until found in the present action in no way affects its character as a part of the obligation created by the assumption agreement. . The term ‘claim’ as used in our statutes includes not only debts already due and payable, but unmatured debts, for these are nevertheless existing obligations and capable of proof. In this respect, they are distinguished from claims which are contingent or mere possibilities.” 151 A. at 180, 74 A.L.R. at 366.
The statute is plain and unambiguous that claims must be probated within the 90-day period, whether due or not. If a creditor desires to share in the general assets of the estate along with other creditors, he must probate his claim. If he is satisfied to rely upon the security for payment of a secured claim, he may do so without probating same and participating in the general assets of the estate.
The lower court erred in holding that Moffitt’s claim was not a probatable claim and that the statute did not apply. Since the decision on that question disposes of the case, it is not necessary to discuss the other assignments of error. The judgment of the lower court is reversed and judgment is rendered here for appellants.
REVERSED AND RENDERED.
PATTERSON, C. J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, BOWLING and COFER, JJ., concur.